FILED
2003 SEP -5 AM 10: 17
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

THE OHIO CASUALTY INSURANCE
COMPANY,

    Plaintiff,

vs.                                CASE NO. CV-02-J-3041-S

ROYAL INSURANCE COMPANY OF
AMERICA; MARKEL AMERICAN
INSURANCE COMPANY and ALTEC
INDUSTRIES, INC.,

    Defendants.

ENTERED
SEP 5 2003

## MEMORANDUM OPINION

Currently pending before the court are cross-motions for summary judgment (docs. 21, 27, 28 and 30), and evidentiary submissions (doc. 22, 31, 36 and 37). The parties all filed memoranda in support of their respective motions. Defendants Markel American Insurance Company ("Markel"), Altec Industries ("Altec"), and Royal Insurance Company of America ("Royal") each submitted a brief in opposition to the plaintiff's motion for summary judgment. The plaintiff submitted a brief in opposition to the defendants individual motions for summary judgment. The court having considered the pleadings, motions and arguments of the parties, finds as follows:



## I. Factual Background

Plaintiff commenced this action by filing a complaint for declaratory judgment alleging that the policies of insurance defendants Royal and Markel issued to defendant Altec had policy limits two times greater than what the defendants asserted those policy limits were.

The underlying facts of this case are not in dispute. On August 14, 1999, minor Joseph A. Beauregard, Jr. was severely and permanently injured when the bucket of the aerial lift he was in either tipped or fell, causing him to fall to the ground. A lawsuit concerning that event was filed in a state court in Massachusetts. Defendant Altec manufactures aerial lifts and both made and owned the lift in question.[1] Plaintiff and defendants Markel and Royal each issued a valid policy of insurance to defendant Altec. The state court action settled.[2] Defendants Markel and Royal each paid their alleged policy limits pursuant to that settlement. Royal asserts its policy limit is $2,000,000.00. Markel asserts its policy limit is $5,000,000.00. The plaintiff also paid an amount as part of that settlement under the policy it issued to Altec, under reservation of rights.

The plaintiff filed this action seeking a declaratory judgment that defendants Royal and Markel's policy limits are actually two times the amount each of these

---

[1]An employee of defendant Altec was giving children joy rides in the lift at the time of the accident.

[2]That settlement occurred after the filing of this declaratory judgment action.

defendants paid toward the settlement in the underlying state court case. The plaintiff's policy is undisputedly excess to these two defendants' policies of insurance issued to Altec. The parties further agree that this dispute is governed by Alabama law.

The plaintiff argues in this action that, because the Fourth Amended Complaint filed in the state court case alleged twelve separate causes of action, the underlying events leading to the state court action comprise more than one "occurrence" as that term is used in each of the relevant insurance policies.[3]

The Royal insurance policy states in relevant part:

**COVERAGE A. BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
**1. Insuring Agreement.**

> a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies .... We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:
>
> > (1) The amount we will pay for damages is limited as described in LIMITS OF INSURANCE (SECTION III); and
> >
> > (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

**COVERAGE C. MEDICAL PAYMENTS**
**1. Insuring Agreement.**

---

[3]Although the Fourth Amended Complaint actually lists twelve causes of action, plaintiff Ohio Casualty groups them into eight types of claims for purposes of its argument here. *See* plaintiff's brief in support at 6.

3

>   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:
>
>   > (1) On premises you own or rent;
>   >
>   > (2) On ways next to premises you own or rent; or
>   >
>   > (3) Because of your operations;
>   > provided that:
>   >
>   > > (1) The accident takes place in the "coverage territory" and during the policy period....

## SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

   a. Insureds;

   b. Claims made or "suits" brought; or

   c. Persons or organizations making claims or bringing "suits."

2. The General Aggregate Limit is the most we will pay for the sum of:

   a. Medical Expenses under Coverage C;

   b. Damages under Coverage A, except damages because of "bodily injury" or "property damage" included in the "products-completed operations hazard"; and

   c. Damages under Coverage B.[4]

---

[4] Coverage B is the "Personal and Advertising Limit" and is not relevant to the facts before this court.

4

5. Subject to 2. or 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of:

    a. Damages under Coverage A; and

    b. Medical expenses under Coverage C

because of all "bodily injury" and "property damage" arising out of any one "occurrence."

**SECTION V – DEFINITIONS**

12. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

14. "Products-completed operations hazard":

    a. Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1) Products that are still in your possession; or

        (2) Work that has not yet been completed or abandoned.

The Declaration page of the policy states:

ITEM 2. Limit of Liability: $2,000,000 each claim; $2,000,000 aggregate

Exhibit 1 to defendant Royal Insurance Evidentiary Submissions.

    The parties agree that the Markel policy is excess to the Royal policy. The Markel insurance policy states as follows:

Item 3. Limits of Liability:

    (A) Each Occurrence Limit                              $5,000,000

(B) General Aggregate Limit (Other than Products/ Completed Operations)     $5,000,000
(C) Products/ Completed Operations Aggregate Limit     $5,000,000
(D) Combined Aggregate Limit     N/A
(E) Self-Insured Retention     $10,000

### SECTION I - INSURING AGREEMENTS

### Occurrence and Claims-Made Coverage

A.    This insurance applies to "bodily injury," "property damage," "personal injury," and "advertising injury" written on an "occurrence" basis, but only if:

    1. The "bodily injury" was caused by an "occurrence" ....

    2. The "occurrence" ... took place in the "coverage territory," ....

**Coverage A– Bodily Injury and Property Damage Liability**

**A. Insuring Agreement**

    We will pay on behalf of the insured for that portion of "ultimate net loss" in excess of the "retained limit" because of "bodily injury" .... to which this insurance applies, but only up to the Limits of Insurance stated in Item 3. of the Declarations. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section II - DEFENSE AND SUPPLEMENTARY PAYMENTS - COVERAGE A and B.

### SECTION II - DEFENSE AND SUPPLEMENTARY PAYMENTS COVERAGE A and B

C.    Both our right and duty to defend any existing or future "claims" or "suits" end when we have exhausted the applicable Limit of Insurance by payment of judgments or settlements under Coverages A or B.

### SECTION IV - LIMITS OF INSURANCE

A.  With respect to Coverage A and Coverage B, the Limits of Insurance shown in item 3.(A), 3.(B), 3.(C), or 3.(D) of the Declarations and the rules below fix the most we will pay regardless of the number of :

 1. Insureds;
 2. "Claims" made or "suits" brought;
 3. Persons or organizations making "claims" or bringing "suits"; or
 4. Coverages afforded under this policy.

B.  If there is a limit stated in item 3.(B) of the Declarations for the General Aggregate Limit, that amount is the most we will pay for all damages under SECTION I - INSURING AGREEMENTS, except for:

 1. Damages included in the "Products-Completed Operations Hazard"; and
 2. Damages covered in the "Underlying Insurance" to which no underlying aggregate limit applies.

C.  If there is a limit states in item 3.(C) of the Declarations for the Products-Completed Operations Aggregate Limit, that amount is the most we will pay under SECTION I - INSURING AGREEMENTS for all damages included within the "Products-Completed Operations Hazard."

D.  If there is a limit stated in item 3.(D) of the Declarations for the Combined Aggregate Limit, that amount is the most we will pay under SECTION I - INSURING AGREEMENTS for all damages, except damages resulting from ownership, maintenance or use of an "auto."

E.  Subject to paragraphs B., C., and D. above, the Each Occurrence Limit stated in item 3.(A) of the Declarations is the most we will pay for the total of all damages arising out of any one "occurrence."

## SECTION VII - DEFINITIONS

3.  "Aggregate limit" means the maximum amount stated in the policy for which the insurer will be liable, regardless of the number of covered "claims."

17. "Occurrence" means:

    a.    With respect to "bodily injury" or "property damage" liability, an accident including continuous or repeated exposure to substantially the same general harmful conditions ...

21. "Products-completed operations hazard:"

    a.    "Products-completed operations hazard" includes all "bodily injury" and "property damage" occurring away from premises you own or rent and caused by or arising out of "your product" or "your work" ....

Markel Policy, submitted as Exhibit B to Markel evidentiary submissions.

Kenneth Russo, Vice-President of Investors Underwriting Managers, Inc., states by affidavit that Altec sought excess coverage through Markel and that Markel provided a policy to Altec with coverage in the amount of $5,000,000 for each occurrence and $5,000,000 in the total aggregate. Affidavit of Russo at ¶¶ 3 and 4, submitted as Exhibit C to Markel's evidentiary submissions. Russo asserts that Altec paid for a policy in the amount of $5,000,000, and not in the amount of $10,000,000. Affidavit of Russo at ¶ 8. Similarly, J. Don Williams, Senior Vice President of Altec, stated in his affidavit that Altec sought $2,000,000 in coverage from Royal and $5,000,000 in coverage from Markel. Affidavit of Williams, submitted as Exhibit A to doc. 29, at ¶ 4.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23. The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issues of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed.R.Civ.P. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must

demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

On motions for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993).

### III. Legal Analysis

Because this case was submitted to the court on cross-motions for summary judgment, and the court finds that the underlying facts of this case are not in dispute, and this case may be wholly resolved by ruling on the pending motions.

The plaintiff argues that defendant Markel's insurance policy should have paid $10,000,000 in the settlement of the underlying litigation and defendant Royal's insurance policy should have paid $4,000,000 in that settlement. Plaintiff makes this interesting and novel argument on the basis that the coverage provided by the policies is based on the number and types of claims brought in complaint in the underlying litigation. Plaintiff's brief in support of motion for summary judgment, at 3. The plaintiff argues that the allegations of the fourth amended complaint in the underlying lawsuit trigger both the General Aggregate Limits and the Products-Completed

Operations Aggregate Limits in both the Royal and Markel policies, therefore doubling the stated limits of both policies. Plaintiff's brief in support at 4. The plaintiff further seeks a declaration that because defendants Royal and Markel have not exhausted their individual policy limits, insurance benefits from plaintiff's policy are not available. *Id.*

The plaintiff's argument is based on the Alabama Supreme Court case of *United States Fire Insurance Co. v. Safeco Insurance Co.*, 444 So.2d 844 (Ala.1983). In that case, two policies of insurance provided coverage in the event of water leaking through the roof. *Id.* at 845. The parties agreed that water leakage began in November, 1979, and that further damage was caused in March, 1980, when the roofing company hired to repair the roof failed to effectively cover a portion of the roof on which it was working. *Id.* Thus, the question before the Court was whether the additional damage sustained in March, 1980 was part of a single occurrence as defined by the insurance policy at issue. *Id.* This simply is not applicable to the facts before this court. No separate event caused injuries to the plaintiff in the underlying litigation. Rather, his injuries were the result of one incident, also called an "occurrence."

In *Safeco*, the Court noted:

In *Alabama Farm Bureau Mutual Cas. Ins. Co. v. Goodman*, 279 Ala. 538, 541, 188 So.2d 268 (1966), this court stated:

11

> "Contracts of insurance, like any other contract, must be construed to give effect to the intention of the parties. If the terms are clear and unambiguous, there is no need for construction. Ambiguities will not be inserted, by strained and twisted reasoning, into contracts where no such ambiguities exist. *Michigan Mutual Liability Co. v. Carroll,* 271 Ala. 404, 123 So.2d 920, and cases there cited."

*Safeco Ins. Co.* 444 So.2d at 846. *See also Home Indemnity Company v. City of Mobile*, 749 F.2d 659 (11th Cir.1984) ("We must give to the terms of the policy the meaning intended by the parties to the policy").

The Court in *Safeco,* interpreting the relevant insurance policy, stated:

In *Appalachian Ins. Co. v. Liberty Mut. Ins. Co.,* 676 F.2d 56, 61 (3rd Cir.1982), the third circuit stated: "The fact that there were multiple injuries and that they were of different magnitudes and that injuries extended over a period of time does not alter our conclusion that there was a single occurrence. *As long as the injuries stem from one proximate cause* there is a single occurrence. *Champion Int'l. Corp. v. Continental Casualty Co.,* 546 F.2d 502, 505-506 (2d Cir.1976), *cert. denied,* 434 U.S. 819, 98 S.Ct. 59, 54 L.Ed.2d 75 (1977). Indeed, the definition of the term 'occurrence' in the Appalachian policy contemplates that one occurrence may have multiple and disparate impacts on individuals and that injuries may extend over a period of time [emphasis added]." The definition in the policy cited in *Appalachian* is very similar to that in the policy in the instant case, and like application of it should be made. The question then becomes: Did the injuries (damages) stem from one proximate cause?

This "cause analysis" was adopted in an early case addressing the application of a similar clause limiting liability in "one occurrence." In *Truck Ins. Exchange v. Rohde,* 49 Wash.2d 465, 471, 303 P.2d 659, 662 (1956), the Washington Supreme Court asked if "[t]here was but one proximate, uninterrupted, and continuing cause which resulted in all of the injuries and damage."

> Since the *Rohde* decision the majority of courts have adopted the "cause" theory of analysis. *See, Bartholomew v. Insurance Co. of North America,* 502 F.Supp. 246 (1980); Annotation 55 A.L.R.2d 1300 (1957). One state court explained further that if the cause is interrupted or replaced by another cause, the chain of causation is broken and more than one accident or occurrence has taken place." 8A Long, *Insurance Law and Practice* § 4891.25 at 18 (1981) (citing *Olsen v. Moore* 56 Wis.2d 340, 202 N.W.2d 236 (1972)).
>
> In the case at hand, the negligent act of the roofing crew was a separate, intervening cause. The damage caused by the roofing crew's failure to adequately cover the exposed portion of the roof was not proximate to the cracks and holes in the other areas of the roof; nor did the latter cause the former.

*Safeco Ins. Co.*, 444 So.2d at 846-847.

The plaintiff here confuses multiple causes of action being alleged in the underlying litigation and multiple "occurrences" causing the resulting injuries. More specifically, the plaintiff asserts that "the negligent design and manufacture claims are easily distinguishable in time and space from the negligent repair, negligent maintenance and the negligent operation claims made by the underlying plaintiffs." Plaintiff's brief in support at 8. While the claims may be distinguishable, only one proximate cause contributed to the underlying plaintiff's injuries, that being the tipping of the aerial bucket on one occasion. Unlike a roof which leaks in different places over several months, no other event intervened to contribute to the underlying

13

plaintiff's injuries.[5] *See e.g., Carson v. City of Pritchard*, 709 So.2d 1199, 1205 (Ala.1998) (recognizing that "as long as the injuries stem from one proximate cause there is a single occurrence"). This is true regardless of the legal theory on which the underlying suit is brought. The plaintiff in the underlying litigation was not separately injured by negligent repair and negligent design. Rather, he suffered one set of injuries, one time from the tipping of the aerial lift. The time of the plaintiff's actual damages, and not when a wrongful act was committed, is the time of the "occurrence" of an accident. *American States Ins. Co. v. Martin*, 662 So.2d 245, 250 (Ala.1995). The tipping or falling of that lift caused the plaintiff's injuries. The multiple allegations in the complaint do not change what those injuries are. *See e.g., Continental Casualty Company v. Brooks*, 698 So.2d 763, 765 (Ala.1997) (stating "all of those acts, in our judgment, led to a single result that formed the basis of [plaintiff's] claim ...").

Similarly, the plaintiff's multiple allegations as to the cause of his injuries is not the legal equivalent to multiple occurrences causing his injuries.[6] Clearly, alleging

---

[5]For example, if the plaintiff below fell and, while lying on the ground, was hit by a car, his injuries would stem from more than one proximate cause. Such a scenario would bring the facts within the *Safeco* case.

[6]In other words, assuming a jury had found for the plaintiff on solely his negligent repair claim but no others claims, the plaintiff's compensable injuries would not have differed.

multiple, and alternative causes of action neither creates, nor expands an insurers liability.[7]

Because this court finds only one occurrence caused the plaintiff's injuries, the court declines to find that either defendant Royal or defendant Markel must provide coverage under more than one section of their respective insurance policies. While the plaintiff argues that its interpretation of the policies, invoking multiple sections to achieve multiple policy limits, creates ambiguities in the policies, the court finds nothing to cause multiple policy limits to apply. Therefore, the court declines to find any ambiguity in the policies. The issue of ambiguity is matter of law for a court to decide. As a matter of law, the court finds the policies are unambiguous. *See e.g. State Farm Fire & Casualty Co. v. Slade*, 747 So.2d 293, 308 (Ala.1999).

Whether these two defendants determined to pay policy limits under their individual General Liability clauses, or their individual Products-Completed Operations clauses, the end result is that they have both paid their policy limits. The policies in question each clearly state what those limits are. As set forth above, defendant Royal's policy states its limits are $2,000,000 for each claim and $2,000,000 in the aggregate. Thus, regardless of whether Royal paid its limits under

---

[7]This is evident from the fact that, with claims identical to those in the underlying litigation, a jury could have returned a verdict in favor of defendant Altec. In that event, the plaintiff would be just as injured, even if the jury found no negligence on the part of defendant Altec.

the General Liability section or the Products-Completed Operations section of its policy, the end result is the same – policy limits have been paid. The same holds true for the policy limits under the Markel policy.[8] The mere fact that more than one policy clause was may be applicable does not create multiple policy limits, nor does it create any ambiguity. This court cannot rewrite to policies to expand coverage in a manner the parties never intended. *See B.D.B. v. State Farm Mutual Auto Insurance Co.*, 814 So.2d 877, 880 (Ala.Civ.App.2001).

The court finds additional support for the policy limits being the stated limits and not double those amounts in defendant Markel's argument that it sold defendant Altec a $5,000,000 insurance policy. *See* Markel's brief in opposition, at 3; affidavit of Russo at ¶¶ 3, 7 and 8. *See also* Altec's brief in support of summary judgment on its counterclaim, at 2 (stating it did not intend to obtain $4 million in coverage from Royal or $10 million in coverage from Markel).

### IV. Altec's Counterclaim

Defendant Altec has filed a **counterclaim** for a declaratory judgment that Royal incorrectly required Altec to pay $750,000.00 under its Retained Limit for Products-

---

[8]For this reason, the court does not consider either defendant Royal or defendant Markel's arguments as to whether the Products-Completed Operations section of its insurance policy is triggered. Defendant Royal's brief in opposition, at 9; defendant Markel's brief in opposition, at 9. The court does not delve into whether the injuries underlying this litigation were caused at, or away from, premises owned or operated by defendant Altec, to trigger these sections of the insurance policies.

Completed Operations section rather than under the Commercial General Liability section of its policy, which has a $100,000.00 Retained Limit. Defendant Altec's answer and counterclaim as stated in document 7 and as restated in its motion for summary judgment on "its counterclaim" (doc. 28) is unclear, as these pleadings do not request the same relief. Additionally, a counterclaim is a claim filed by one party against the opposing party. *See* Rule 13, Fed.R.Civ.Pro. Any claim by Altec designated as a counterclaim would necessarily be a claim against Ohio Casualty. Ohio Casualty is not the entity that required Altec to pay $750,000.00.

Defendant Royal asserts to this court that "the products-completed hazard portion of the policy is not triggered." *See* Defendant Royal's brief in support, at 9-10, 13. Any possible overpayment by Altec resulted from the mistake of Royal, and not Ohio Casualty. The court, finding no cross-claim against defendant Royal is before it, is of the opinion defendant Altec's counterclaim is improperly plead and due to be dismissed.

## V. Conclusion

The court having considered the foregoing, and being of the opinion plaintiff's motion for summary judgment (doc. 21) is due to be denied, it is therefore **ORDERED** by the court that the plaintiff's motion for summary judgment be and hereby is **DENIED**. The court being of the opinion that defendant's Markel (doc. 27)

17

and Royal (doc. 30) have already paid their policy limits, the court is of the opinion that defendant's Markel and Royal's motions for summary judgment are due to be granted. It is therefore **ORDERED** by the court that defendants' Markel and Royal's motions for summary judgment be and hereby are **GRANTED**, the court finding no genuine issues of material fact remain and that these defendants are entitled to judgment in their favor as a matter of law.

The court further finding that defendant Altec's counterclaim is improperly plead; it is therefore **ORDERED** that defendant Altec's counterclaim is hereby **DISMISSED**.

**DONE** and **ORDERED** this the ___4___ day of September, 2003.

_____
INGE P. JOHNSON
UNITED STATES DISTRICT JUDGE